**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 24-13659

_____

RONALD KING,
ANTHONY ROBINSON,
CHRIS SAMUEL,
NOLAN JONES, JR.,
BRIAN STRUGGS,

*Plaintiffs-Appellants,*

*versus*

UA LOCAL 91,
   United Association of Plumbers, Steamfitters, Welders and HVAC Technicians, et al.,

*Defendants,*

DAY & ZIMMERMANN NPS, INC.,

*Defendant-Appellee.*

2                    Opinion of the Court                    24-13659

———————————————

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 2:19-cv-01115-ACA

———————————————

Before JORDAN, JILL PRYOR, and NEWSOM, Circuit Judges.

PER CURIAM:

Ronald King, Anthony Robinson, Brian Struggs, Nolan Jones, Jr., and Chris Samuel are black men who at various times worked for Day & Zimmermann (D&Z), a contractor that specializes in maintenance of power plants and other industrial facilities. In 2019, the men sued D&Z for racial discrimination.[1] They brought disparate-impact claims under Title VII of the Civil Rights Act of 1964, as well as disparate-treatment claims under Title VII and 42 U.S.C. § 1981. They also sought to certify a class of similarly situated black workers. And two of the plaintiffs—Jones and Samuel—brought retaliation claims under Title VII, arguing that D&Z fired or demoted them because they filed charges with the Equal Employment Opportunity Commission (EEOC).

The district court initially dismissed the complaint as a shotgun pleading and struck the plaintiffs' class claims. After the plaintiffs filed an amended complaint—which didn't replead the class

———————————————

[1] The plaintiffs also sued their union, the United Association of Journeymen & Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada (UA), as well as one of its affiliates, Local 91. We address those claims in a separate decision, No. 24-13658.

claims—the court again dismissed the disparate-treatment and disparate-impact claims as a shotgun pleading, this time with prejudice. The court allowed Jones and Samuel's retaliation claims to proceed to discovery, but it ultimately granted D&Z's motion for summary judgment on those claims. Each of the district court's decisions was proper, so we affirm.

## I

First, we address the district court's with-prejudice dismissal of the disparate-treatment and disparate-impact claims. We hold that the court didn't abuse its discretion in dismissing these claims on shotgun-pleading grounds.[2]

Shotgun pleadings "fail[] to one degree or another to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Vibe Micro*, 878 F.3d at 1295 (citation modified). As a result, they violate Federal Rule of Civil Procedure 8, which mandates "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

This Court has helpfully categorized shotgun pleadings into four types. The fourth one, which is relevant here, includes complaints that "assert[] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is

---

[2] "We review a dismissal on Rule 8 shotgun pleading grounds for an abuse of discretion." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1294 (11th Cir. 2018).

brought against." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015).

Here, the district court reasonably concluded that, even after amendment, the plaintiffs' claims against D&Z amount to this kind of a shotgun pleading. The Second Amended Complaint still mashes together allegations against different defendants and fails to clarify which defendant is responsible for which purportedly unlawful act.

Consider some examples. The plaintiffs allege that prior experience was a discriminatory factor in hiring decisions, but the complaint's vague phrasing and use of the passive voice obscures which of the defendants relied on prior experience. The complaint, for example, alleges:

> D&Z's hiring or appointment to foremen and other "leadership" positions is based, in part, on candidates "prior experience" and/or Union referrals based on prior experience. D&Z has informed the Plaintiffs that selections to foreman, general foreman and "leadership" positions are based on "leadership," prior experience, and absenteeism." Such "prior experience" has disparate impact on the Plaintiffs and African Americans in general.

Second Am. Compl. ¶ 97, Dkt. No. 50. It's unclear what use of prior experience is attributable to what defendant and to what degree D&Z is responsible for Local 91's reliance on prior leadership. Accordingly, we can't tell "which of the defendants are responsible for which acts or omissions." *Weiland*, 792 F.3d at 1323.

24-13659                Opinion of the Court                5

The plaintiffs' discussion of word-of-mouth recruitment practices is another example. In one paragraph, they allege three actions that contribute to disparate impact: D&Z's failure to "post, announce[,] or otherwise recruit candidates for open positions"; the unions' failure to do the same; and the word-of-mouth communication of job opportunities among union members and D&Z employees. Second Am. Compl. ¶ 91. The plaintiffs also allege that "[t]he discriminatory impact of such word-of-mouth practices was compounded by D&Z's refusal to provide a means of applying for open positions." *Id.* It's ultimately unclear what acts underlie D&Z's liability—it could be D&Z's own failure to announce positions, the union's similar failure, the word-of-mouth communication among union members or employees, or some combination of all these acts. Faced with these muddled allegations, the district court reasonably concluded that the complaint is a shotgun pleading.

Neither of the plaintiffs' responses persuades us. First, the plaintiffs point out that the counts against D&Z specify that they apply only to D&Z and not to the unions. This, to be sure, is a small step in the right direction, but it doesn't resolve the main problem with the complaint: The plaintiffs still haven't clarified which defendants are responsible for what behavior. *See Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1359 (11th Cir. 2018) (holding that a complaint was still a shotgun pleading when the plaintiffs "attempt[ed] halfheartedly to cure only one of the pleading's many ailments by naming which counts pertained to each Defendant").

Second, the plaintiffs emphasize that the complaint frames the entire referral and selection process as a joint endeavor of D&Z and Local 91 (and, by extension, UA).  The logic seems to be that if D&Z is liable for all actions of Local 91 related to referrals and selections, then there's no confusion about who has done what.  But the plaintiffs haven't offered facts supporting their allegations that D&Z and Local 91 "adopted a joint selection and referral system," and therefore have "joint and several liability" for all policies and practices related to referrals and selections.  Adding further confusion, the plaintiffs alleged that they "obtained . . . positions with D&Z . . . pursuant to the Defendant Unions' hiring hall relationships *with the Southern Company and/or other companies who utilize the Defendant Unions' hiring hall referral system*."  Second Am. Compl. ¶ 13 (emphasis added); *see also id.* ¶ 10 ("D&Z is contractually obligated to hire union members for craft positions . . . pursuant to the Maintenance and Modification Agreement *with the Southern Company*.") (emphasis added).  At no point does the complaint explain what the Southern Company or these unnamed "other companies" are; what D&Z's relationship with these companies is; what the Unions' relationship with them is; and who exactly contracted with whom and for what.  So it remains a problem that the plaintiffs haven't clarified who is responsible for what allegedly unlawful actions even under their vague joint-and-several-liability theory.

Having concluded that the district court didn't abuse its discretion in dismissing the disparate-treatment and disparate-impact claims on shotgun-pleading grounds, the final question is whether a dismissal *with prejudice* was appropriate.  It was.  The court had

already dismissed the claims as a shotgun pleading once, without prejudice. In that first dismissal order, the court discussed the complaint's deficiencies at length. So the plaintiffs "had fair notice of the defects and a meaningful chance to fix them," *Jackson*, 898 F.3d at 1358, making dismissal with prejudice proper.

## II

Next, we turn to the district court's dismissal of the class claims. We hold that the plaintiffs have failed to challenge each ground on which the court based its dismissal, and we therefore affirm.

In its first dismissal order, the district court rejected the plaintiffs' class claims for two reasons. First, the entire First Amended Complaint, including the class claims, was dismissed as a shotgun pleading. The court deemed "the Amended Complaint . . . an impermissible shotgun pleading," and we take the court's language at face value—"the Amended Complaint" meant the *entire* complaint, not just certain claims. Second, the district court addressed the class claims specifically and concluded on the merits that there wasn't a plausible case for class certification. So, at the end of the day, the court's dismissal of the class claims rested on both shotgun-pleading and merits grounds, with each providing an independent basis for dismissal.

When there are multiple independent grounds for a district-court judgment, an appellant must challenge each on appeal. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014). If the appellant doesn't "plainly and prominently" raise a

claim of error in his initial brief, he abandons that claim. *Id.* at 681. "[P]assing references" do not suffice. *Id.*

Here, the plaintiffs don't address in their initial brief whether the district court erred by dismissing the First Amended Complaint as a shotgun pleading. The most that can be said of their attempt to raise that issue is (1) a reference to it in the summary of their argument and (2) a single statement that the district court's shotgun pleading "findings [with respect to the FAC] were erroneous." Without further argument, neither statement is sufficient to adequately raise the issue. *See id.* ("[A]n appellant abandons a claim when he . . . makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority.'"); *see also id.* ("Abandonment of a claim or issue can also occur when the passing references to it are made in the . . . 'summary of the argument[.]'"). It's true that the plaintiffs discuss this issue in their reply brief. But that's "too late"—we won't address arguments raised "for the first time in a reply brief." *Id.* at 683 (citation modified). So the plaintiffs have abandoned any challenge to the district court's dismissal of the class claims on shotgun-pleading grounds, and we therefore affirm.

## III

Lastly, we turn to the district court's summary judgment order regarding Jones and Samuel's retaliation claims. We hold that the court properly granted summary judgment in favor of D&Z.

## A

Title VII prohibits an employer from retaliating against an employee for engaging in certain protected activity. *See* 42 U.S.C. § 2000e-3(a). Protected activity includes (1) "oppos[ing] any practice made an unlawful employment practice by [Title VII]" and (2) "ma[king] a charge, testif[ying], assist[ing], or participat[ing] in any manner in an investigation, proceeding, or hearing under [Title VII]." *Id.* "The first part of the anti-retaliation provision is known as the 'opposition clause' and the second part as the 'participation clause.'" *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1134 (11th Cir. 2020) (en banc).

A plaintiff can establish a retaliation claim in either of two ways. One option is to use a modified version of the *McDonnell Douglas* framework. *See Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1307 (11th Cir. 2023) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 804 (1973)). *McDonnell Douglas* prescribes a three-step burden-shifting process for retaliation claims: First, a plaintiff "must establish a prima facie case of retaliation by proving that she engaged in statutorily protected conduct; she suffered an adverse employment action; and a causal relation exists between the two events." *Id.* If a plaintiff does that, the burden shifts to the employer to "proffer a legitimate, nonretaliatory reason for the adverse action." *Id.* (citation modified). And if the employer does so, the burden shifts back to the plaintiff to show that the proffered reason was pretextual. *Id.* A plaintiff, however, doesn't have to employ *McDonnell Douglas*. He can instead rely on a "convincing mosaic" of circumstantial evidence to establish retaliation. *Id.* at

1310.  Put differently, a plaintiff "may prove retaliation with any circumstantial evidence that creates a reasonable inference of retaliatory intent."  *Id.*

Regardless of which route a plaintiff travels, causation is a necessary element of a retaliation claim.  The plaintiff must show that the adverse employment action resulted from his protected activity.  *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013) ("Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action.").  To establish causation, "a plaintiff needs to show . . . that the decisionmaker actually knew about the employee's protected expression."  *Martin v. Fin. Asset Mgmt. Sys., Inc.*, 959 F.3d 1048, 1053 (11th Cir. 2020).  After all, without that knowledge, it's impossible to show that a decisionmaker took the adverse action "because" of the plaintiff's protected activity, as Title VII requires.  42 U.S.C. § 2000e-3(a).  A plaintiff can invoke circumstantial evidence to establish knowledge, but he can't rely on "unsupported inference" or "mere speculation."  *Martin*, 959 F.3d at 1053 (citation modified).

**B**

The district court correctly determined that neither Jones nor Samuel showed a genuine factual dispute as to whether the person responsible for the adverse employment action knew that the plaintiff had filed an EEOC charge, which forecloses their retaliation claims.

**i**

We first consider the claim brought by Jones.  He alleges that after he filed a charge with the EEOC alleging racial discrimination, D&Z retaliated by firing him in April 2018.  During summary judgment briefing, the parties disputed who was responsible for Jones's termination.  D&Z argued that it was Steve Winnett, the site supervisor, whereas Jones asserted that it was Michael Aaron, a supervisor underneath Winnett.  Because Jones was the non-moving party, the district court accepted his view of the facts for purposes of summary judgment and analyzed Jones's retaliation claim on the assumption that Aaron was the relevant decisionmaker.

The district court correctly determined that Jones hadn't created a genuine factual dispute as to whether Aaron was aware of Jones's EEOC charge.  Jones has identified no evidence suggesting that Aaron knew about the charge; all he points to are the facts that (1) the EEOC notified D&Z of the charge and (2) Mike Millsap, a different supervisor, stated that he "probably" was aware of and received a copy of the charge.  Neither fact suggests that Aaron—the purported decisionmaker—knew of the charge.  That is fatal to Jones's retaliation claim.

Having failed to establish Aaron's knowledge, Jones also offers a new theory on appeal.  He suggests that Millsap was actually the person responsible for his termination.  This position, however, is inconsistent with Jones's briefing at summary judgment, where he repeatedly stated that Aaron was the decisionmaker.  And by

"revers[ing] course," Jones "impermissibly s[eeks] to present a new position (or issue) on appeal." *Gould v. Interface, Inc.*, 153 F.4th 1346, 1356 (11th Cir. 2025). Put differently, by failing to present it to the district court, Jones has forfeited the position that Millsap was the relevant decisionmaker.

Deciding whether a litigant has forfeited a position isn't "algorithmic," but we have suggested that a party may not switch his position when doing so "jettisons the factual predicates that underlie the district-court proceedings and substitutes an altogether different inquiry in their place." *Id.* at 1357. Jones commits that sin here. Facts related to Aaron's knowledge, which were key to the district-court proceedings, "ceased to matter" once Jones claimed that someone else was responsible for his termination. *Id.* The questions of Millsap's authority and knowledge, meanwhile, present "altogether different inquir[ies]" from what was adjudicated before the district court. *Id.* We will not venture down those unexplored factual trails. If Jones believes that Millsap was responsible for his termination, he should have staked out that position before the district court.

## ii

We next consider Samuel's retaliation claim. Samuel contends that D&Z removed him from a foreman position in February 2019 in retaliation for EEOC charges that he had filed over the course of the previous year. In his summary judgment briefing, Samuel was clear that Matt Vick, a supervisor, was responsible for his removal. Samuel now concedes that "Vick was not aware

[]Samuel had filed a charge." Br. of Appellants at 49. So, by Samuel's own admission, the relevant decisionmaker lacked knowledge of his Title VII–protected activity. That precludes a finding of retaliation. *See Martin*, 959 F.3d at 1053.

Samuel, in response, essentially claims that this analysis is too narrow. He contends that he was also retaliated against for *opposing* racial discrimination. In other words, Samuel argues that he engaged in protected activity under Title VII's opposition clause as well as its participation clause, and the district court erred by limiting its analysis to the participation clause. But in his complaint, Samuel didn't plead that he took actions shielded by the opposition clause. The only protected action that Samuel alleged was his filing of EEOC charges. Samuel raised his opposition-clause argument for the first time at summary judgment, but this was too late, as a plaintiff can't raise new claims in summary judgment briefing. *See MSP Recovery Claims, Series LLC v. United Auto. Ins. Co.*, 60 F.4th 1314, 1319 (11th Cir. 2023).[3]

⋆    ⋆    ⋆

Ultimately, neither Jones nor Samuel showed a triable issue as to whether the person responsible for his termination knew about the EEOC charges that had been filed. That lack of

---

[3] Samuel, like Jones, also changes his position as to who was the relevant decisionmaker. Samuel now claims that Vick *wasn't* the decisionmaker, which makes Vick's lack of knowledge irrelevant. But this contradicts the position Samuel took before the district court, and he can't change tack on appeal. *See supra* at 11–12.

knowledge precludes a finding of retaliation, so the district court correctly granted summary judgment in favor of D&Z.

## IV

In sum, the district court correctly rejected each of the plaintiffs' claims (or, in the case of the class claims, the plaintiffs have failed to properly challenge the district court's decision). We accordingly affirm the district court's dismissal orders and grant of summary judgment.

**AFFIRMED.**